**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| HEATHER LEA GOLDENBAUM, et al., : | CIVIL ACTION NO. 08-1127 (MLC) |
| Plaintiffs, : | **MEMORANDUM OPINION** |
| v. : |  |
| ROBERT DELORENZO, et al. : |  |
| Defendants. : |  |

**COOPER, District Judge**

The plaintiffs, Heather Lea Goldenbaum ("Goldenbaum") and Carol Junz ("Junz") (collectively "plaintiffs") commenced this action against several defendants including Robert DeLorenzo and Cathy DeLorenzo ("the Delorenzos"). The plaintiffs asserted claims for, inter alia, conversion, trespass, and negligence. (Dkt. entry no 16, Am. Compl.)  The DeLorenzos now move for summary judgment in their favor on the negligence claim only, pursuant to Federal Rule of Civil Procedure ("Rule") 56.  (Dkt. entry no. 32, Mot. for Summ. J.)  The Court determines the motion on the briefs without an oral hearing, pursuant to Rule 78(b). For the reasons stated herein, the Court will deny the motion insofar as it seeks judgment against Goldenbaum, and grant the motion insofar as it seeks judgment against Junz.

**BACKGROUND**

Goldenbaum's father, William Goldenbaum ("decedent"), died on March 6, 2006. (Am. Compl. at ¶ 13.) Prior to his death, the decedent leased an apartment from the DeLorenzos. (Id. at ¶ 11.) The express terms of the lease made the agreement binding on "all parties who lawfully succeeded to their rights." (Mot. for Summ. J., Ex. A, Lease at ¶ 31.)

Goldenbaum is the principal beneficiary of the decedent's will and was appointed the executrix of the decedent's estate. (Dkt. entry no 38, Pl. Br. at 2.) Junz is Goldenbaum's mother and was married to the decedent in 1982. (Dkt. entry no. 32, Def. Br. at 2.) Junz and the decedent were divorced in 2003. (Mot. for Summ. J., Ex. B, Goldenbaum Final Judgment of Divorce.) Junz was originally named as the primary beneficiary in the decedent's will, but lost her interest in the estate as a result of their divorce. (Dkt. entry no. 41, Loughry Cert., Ex. B, Goldenbaum Will.) Junz had also been named as the executrix of the decedent's estate, but was relieved of this role some time after their divorce. (Def. Br. at 8.)

The plaintiffs sought to enter the decedent's apartment on March 7, 2006 in order to retrieve certain personal items. (Pl. Br. at 2.) They allege that the DeLorenzos prevented them from accessing the apartment. (Am. Compl. at ¶ 22.) Eventually Goldenbaum was permitted to enter briefly and gather some of the

decedent's clothing and documents for the funeral. (Id.) Goldenbaum alleges that the apartment was neat and orderly at that time. (Id. at ¶ 25.)

Shortly after leaving, the plaintiffs were contacted by the DeLorenzos and were told they would be allowed to return to the apartment and take additional items. (Id. at ¶ 26.) The plaintiffs allege that when they returned, the apartment was in disarray. (Id. at ¶ 29.) They claim that boxes had been opened, and various other items were disturbed and scattered around the apartment. (Id.) The plaintiffs then collected and removed some of the decedent's belongings, but allege that they left much of the decedent's property in the apartment. (Id.)

The plaintiffs returned to the apartment on March 9, 2006 and entered without the knowledge of the DeLorenzos. (Id. at ¶ 35.) The DeLorenzos contacted the police upon learning that the plaintiffs had entered the apartment. (Id. at ¶ 37.) The police ordered the plaintiffs to leave the apartment and refrain from returning. (Id.) The DeLorenzos subsequently changed the lock to the apartment to prevent the plaintiffs from future entry. (Def. Br. at 2.)

The Delorenzos later gathered the decedent's remaining property, and removed it from the apartment. (Id. at 3.) Robert DeLorenzo forced open and removed a safe, located in a closet in the apartment. (Dkt. entry no. 39, Ex. D, Dep. of Robert

DeLorenzo at 79:3-15.)  He claims that the safe was empty.  (Id.) The DeLorenzos distributed approximately ten pieces of the decedent's jewelry to an individual with no interest in the decedent's estate.  (Dkt. entry no. 39, Ex. A, Dep. of Kathy DeLorenzo at 120:4-22.)  The DeLorenzos later prepared an inventory of the decedent's personal property remaining in the apartment and placed the items in a leased self-storage space. (Def. Br. at 3.)  The property remained in the storage facility until the New Jersey Superior Court ordered the items inventoried and returned to the decedent's estate in February 2007.  (Id.) The plaintiffs allege that several items were missing.  (Am. Compl. at ¶ 45.)

## DISCUSSION

### I. Summary Judgment Standard

The standard for a motion for summary judgment is well-settled and will be briefly summarized here.  Rule 56(c) provides that summary judgment is proper if the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  In making this determination, the Court must "view[] the record in the light most favorable to the non-moving party and draw[] all inferences in that party's favor."  United States ex rel. Josenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009)

4

(citing Abramson v. William Patterson Coll., 260 F.3d 265, 276 (3d Cir. 2001)).

The moving party has the initial burden on demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may satisfy this burden by showing "that there is an absence of evidence to support the nonmoving party's case" when the nonmoving party bears the ultimate burden of proof at trial. Id. at 325. Once the moving party has met this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

## II. Application of the Legal Standard

### A. Negligence

To prevail on a claim for negligence under New Jersey law, a plaintiff must establish the existence of a duty owed to the plaintiff by the defendant, a breach of that duty, and that the breach was the proximate cause of the plaintiff's injuries. Keith v. Truck Stops Corp. of Am., 909 F.2d 743, 745 (3d Cir. 1990). In the context of a lease, a landlord has "a duty to keep areas within his control in a reasonably safe condition so as not to endanger the lives or property of his tenants." Scully v. Fitzgerald, 843 A.2d 1110, 1112 (N.J. 2004). A landlord may therefore be liable for a "failure to secure" a tenant's property "placed within the control of the landlord." Braitman v.

5

Overlook Terrace Corp., 346 A.2d 76, 87 (N.J. 1975) (explaining that although the landlord is not "an insurer of the security of the tenant's property," he should still take "those measures of protection which are within his power to take and which will reduce the risk" of damage or theft).  A lease generally "is not terminated by the death of the landlord or the tenant" absent a covenant directing otherwise.  WG Assocs. v. Estate of Roman, 753 A.2d 1236, 1238 (N.J. App. Div. 2000).  Thus, the landlord's duties under a lease are not extinguished by the death of the lessee.  Id.

The DeLorenzos claim that they are entitled to summary judgment in their favor on the negligence claim.  They argue that they "owed no duty" to Junz "since she had no interest" in the decedent's property, and therefore, cannot be liable for negligence.  (Def. Br. at 8.)  They also claim that if any duty was owed to Goldenbaum the negligence claim fails because "there is no evidence they breached that duty" and "the plaintiffs have failed to establish that they have been damaged."  (Id.)

The plaintiffs assert that the DeLorenzos "had or assumed a duty to not to impair the property rights and interests" of the decedent and his estate.  (Am. Compl. at ¶ 84.)  They argue that the DeLorenzos breached this duty by "failing to safeguard" the decedent's property and "failing to ascertain the Estate's rights before disposing of" it.  (Pl. Br. at 8, 11.)

6

By virtue of the lease agreement, the DeLorenzos owed the decedent all the duties incumbent in a landlord-tenant relationship.  They therefore had a duty to protect the decedent's property that was within their control from damage. Scully, 843 A.2d at 1112.  Under the common law, as well as the express terms of the lease, this duty was not extinguished by the decedent's death, but rather was transferred to Goldenbaum as the executrix of his estate.   WG Assocs., 753 A.2d at 1238.

The DeLorenzos attempt to satisfy their initial burden of demonstrating the absence of a genuine issue of material fact by arguing that there is no evidence that they breached the duty owed to Goldenbaum.  The pleadings and discovery materials on file, however, suggest otherwise.  In his deposition testimony, Robert DeLorenzo acknowledged that in order to get into the locked safe in the decedent's apartment without a key, he "punched the cylinder right out," detached the safe from the floor, and "opened the door."  (Dep. of Robert DeLorenzo at 79:3-15.)  Kathy DeLorenzo conceded that without consulting with a lawyer or the police, she distributed some of the decedent's jewelry to individuals without an interest in his estate because it was "what I felt was right in my heart."  (Dep. of Kathy DeLorenzo at 121:14.)  The DeLorenzos further admit that once the apartment was in their exclusive control, despite the existence of the lease, they moved the decedent's remaining property from

the apartment to a self-storage facility.  (Def. Br. at 3; Notice of Mot. for Summ. J., Ex. E, Self-Storage Occupancy Agreement.)

There appears to be a genuine issue as to whether Goldenbaum, as executrix of the decedent's estate, was denied possession of the decedent's property as a result of the DeLorenzos' conduct. Viewed in the light most favorable to Goldenbaum, a jury could reasonably find that the DeLorenzos breached their duty to protect the decedent's property that was in their control.  Thus, the DeLorenzos have failed to satisfy their burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  The motion will be denied insofar as it seeks judgment against Goldenbaum.

The DeLorenzos however, have shown that Junz cannot demonstrate a prima facie claim for negligence.  They established that Junz no longer either served as executrix or was a beneficiary to the decedent's estate.  (Def. Br. at 8; Loughry Cert., Ex. B, Goldenbaum Will.)  As such, they did not owe her a duty.  Junz, however, failed to respond to this argument or "set forth specific facts" showing any alternative basis from which the DeLorenzos would owe her a duty.  Fed.R.Civ.P. 56(e).  As she cannot demonstrate that a duty was owed to her, Junz is unable establish the elements necessary for a claim of negligence. Keith, 909 F.2d at 745.  She has therefore failed to satisfy her burden of showing that there is a genuine issue of material fact

for trial.  Accordingly, the motion will be granted insofar as it seeks judgment against Junz.

### B. Damages

The DeLorenzos argue that even if there is a genuine issue of material fact regarding negligence, any claims against the DeLorenzos must be dismissed because the damages are "so speculative that a trier of fact will be unable to make a fair and reasonable determination of value."  (Def. Br. at 10.)  Uncertainty in the value of damages, however, is "not fatal" to a claim's ability to survive a motion for summary judgment.  Cornell Capital Partners, L.P. v. Eagle Broadband, Inc., No. 03-1860, 2006 WL 1098175, at *8 (D.N.J. Mar. 28, 2006).  "The issue of damages is ultimately an issue of fact" to be determined by a jury.  John M. Floyd & Assoc., Inc. v. Ocean City Home Bank, No. 03-1473, 2008 WL 4534079, at *7 (D.N.J. Oct. 2, 2008).  Thus, the Court cannot say as a matter of law that the plaintiffs' damages are so speculative as to warrant summary judgment on that issue.

### CONCLUSION

The Court, for the reasons state supra, will deny the motion insofar as it seeks judgment against Goldenbaum and grant the motion insofar as it seeks judgment against Junz.  The Court will issue an appropriate order.

                                        s/ Mary L. Cooper
                                    **MARY L. COOPER**
                                    United States District Judge

Dated:    July 16, 2010