**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HEATHER LEA GOLDENBAUM, et al., | CIVIL ACTION NO. 08-1127 (MLC) |
| Plaintiffs, | **MEMORANDUM OPINION** |
| v. | |
| ROBERT DELORENZO, et al., | |
| Defendants. | |

**COOPER, District Judge**

The plaintiffs, Heather Lea Goldenbaum ("Goldenbaum") and
Carol Junz ("Junz") (collectively "plaintiffs") commenced this
action against several defendants, including the Borough of Surf
City, County of Ocean, State of New Jersey ("Surf City"), and
members of its police force, Chief W. Collins ("Collins"),
Sergeant John Casella ("Casella"), and Patrolman William Robinson
("Robinson") (collectively, "Surf City defendants").  The
plaintiffs assert claims for, <u>inter alia</u>, negligence, false
arrest and imprisonment, and violations of their rights under the
Fourth, Fifth, and Fourteenth Amendments to the United States
Constitution under 42 U.S.C. § 1983 ("Section 1983").  (Dkt.
entry no. 16, Am. Compl.)  The Surf City defendants now move for
summary judgment in their favor, pursuant to Federal Rule of
Civil Procedure ("Rule") 56(c).  (Dkt. entry no. 48, Mot. for
Summ. J.)  The two other defendants in this action, Robert

DeLorenzo and Kathy DeLorenzo ("DeLorenzos"), are not parties to the motion.[1]  The Court determines the motion on the briefs without oral argument, pursuant to Rule 78(b).  The Court will grant the motion in part and deny the motion in part, as explained below.

## BACKGROUND

Goldenbaum's father, William Goldenbaum ("decedent"), died on March 6, 2006.  (Am. Compl. at ¶ 13.)  Before his death, the decedent leased an apartment from the DeLorenzos.  (Id. at ¶ 11.)  The express terms of the lease made the agreement binding on the tenant, the landlord, and on "all parties who lawfully succeeded to their rights and responsibilities."  (Dkt. entry no. 51, Ex. C, Goldenbaum Lease at ¶ 31.)

Goldenbaum is the principal beneficiary of the decedent's will and was appointed executrix of the decedent's estate.  (Dkt. entry no. 51, Pl. Opp'n at 1.)  Junz married the decedent in 1982 and is Goldenbaum's mother.  (Dkt. entry no. 32, DeLorenzo Br. at 1.)  Junz and the decedent divorced in 2003.  (Dkt. entry no. 32, Ex. B, Final J. of Divorce.)  Junz was originally the primary beneficiary, but lost her interest in the estate as a result of their divorce.  (Dkt. entry no. 48, Ex. B, Goldenbaum Will.)

---

[1] However, Delorenzo is a police officer in another municipality, a fact he made known to the Surf City defendants, and the plaintiffs also assert Section 1983 claims against him in their Amended Complaint.  (Am. Compl. at 11-12.)

The plaintiffs went to the decedent's apartment on March 7, 2006 in order to retrieve certain personal items. (Pl. Opp'n at 7-8.) They allege they were seeking the clothing specified in the decedent's will, as well as the documentation required to provide him with a military funeral. (Id. at 8.) They were met there by Collins, who told them DeLorenzo did not want them on the property. (Id. at 7.) The plaintiffs showed Collins a will designating Goldenbaum and Junz as beneficiaries and executrices. (Id. at 8; dkt. entry no. 48, Ex. D, Collins Rpt. at 9-10.) This was not the will that was eventually probated. (Dkt. entry no. 48, Def. Br. at 3.) Collins then either requested or ordered the plaintiffs to go with him to the police station, and then to a restaurant to await DeLorenzo's arrival. (Pl. Opp'n at 7-8, Def. Br. at 3-4.) Eventually Goldenbaum was permitted to enter the apartment to gather some of the decedent's clothing for the funeral. (Pl. Opp'n at 8-9.) She did not find the military papers. (Id.)

Shortly after leaving, the plaintiffs were contacted by DeLorenzo and were told they could come back to the apartment and take additional items. (Id. at 9.) The plaintiffs claim that when they returned, boxes had been opened and things had been moved. (Id.) The plaintiffs then collected and removed some of the decedent's belongings, but claim that they left much of the decedent's property in the apartment. (Id.)

The plaintiffs returned to the apartment on March 9, 2006 and entered with an extra key and without the knowledge of the DeLorenzos. (Id. at 10.)  The plaintiffs summoned the police when they discovered further items missing. (Id. at 10, Def. Br. at 5.)  Casella came to the apartment with another officer to investigate.  When he contacted Collins, he learned that the DeLorenzos did not want the plaintiffs in the apartment. (Def. Br. at 6.)  Casella next called DeLorenzo, who demanded that the plaintiffs be arrested for trespass and burglary. (Id.)  The plaintiffs claim that Casella told them that the "Big Cheese" did not want them there. (Dkt. entry no. 51, Ex. A, Interrog. Ans. at 7.)  Casella ordered the plaintiffs out of the apartment and either requested or ordered them to accompany him to the police station. (Id. at 7, Pl. Opp'n at 10-11.)  The plaintiffs were not handcuffed and they were not taken in a squad car. (Def. Br. at 7; dkt. entry no. 48, Ex. O, 6-4-09 Junz Dep. at 47.)

The plaintiffs went to the police station, in part, to file a complaint for theft; meanwhile Casella asked the on-call Ocean County Assistant Prosecutor ("AP") as to whether he should arrest the plaintiffs as DeLorenzo requested. (Def. Br. at 8.)  The AP recommended no further action. (Id.)  The plaintiffs allege their complaint was not taken seriously and that they were kept at the station for some time. (Dkt. entry no. 48, Ex. N, 4-30-09 Goldenbaum Dep. at 59-61, 120-22.)  In a subsequent phone call

4

placed by Casella, Delorenzo admitted to removing pieces of the decedent's property from the apartment.  (Dkt. entry no. 48, Ex. F, Casella Rpt. at 3.)  DeLorenzo said he removed the safe from a closet and was holding it and other items for "safekeeping." (Id.)[2]  Casella did not attempt to recover this property.  (Dkt. entry no. 48, Ex. E, 6-23-09 Casella Dep. at 49-50.)

On March 11, the decedent's funeral was held without military honors because the plaintiffs never found the necessary paperwork.  (Pl. Opp'n at 11.)  Afterwards, the plaintiffs and others proceeded to the apartment to again attempt to retrieve some belongings.  (Id.)  At this point, the Surf City Police Department was on notice from Collins that the plaintiffs were not permitted on the property until they presented the proper paperwork.  (Def. Br. at 9.)  DeLorenzo had also asked the police to keep an eye on his property.  (Id.)  It was at this time that Robinson stopped to investigate when he noticed cars at the apartment.  (Id.)  He attempted to prevent Junz from entering, and threatened her with arrest for trespass.  (Id. at 10.)

Junz's husband, Richard Junz, told Robinson that there was a valid lease on the property and thus his action constituted an "improper lock-out."  (Id.)  Robinson did not ask to see the

---

[2] The DeLorenzos later distributed some of the decedent's jewelry to an individual with no interest in the decedent's estate.  (Dkt. entry no. 39, Ex. A, Kathy DeLorenzo Dep. at 120.)

lease and the plaintiffs did not proffer one.  (Dkt. entry no. 48, Ex. G, 6-23-09 Robinson Dep. at 14.)

The DeLorenzos arrived at this point and a verbal altercation occurred.  (Id.)  Robinson threatened everyone with arrest for disorderly conduct if they did not stop arguing, although no one was charged.  (Id.)  An hour later, Robinson was once again summoned to the apartment by DeLorenzo, who showed him a cut screen and entry made through a rear door to the apartment. (Id. at 10-11.)  Despite DeLorenzo's request, Robinson declined to make any arrests at that time.  (Id. at 11.)

## PROCEDURAL HISTORY

The plaintiffs brought this action against the DeLorenzos and the Surf City defendants on March 3, 2008.  (Dkt. entry no. 1, Compl.)  They then filed an Amended Complaint on July 30, 2008.  (Am. Compl.)  On April 15, 2010, the DeLorenzos moved for summary judgment as against both Goldenbaum and Junz on the negligence claim only.  (Dkt. entry no. 32, DeLorenzo Mot.)  The Court granted summary judgment as to Junz, but denied the motion as to Goldenbaum.  (Dkt. entry no. 46, 7-16-10 Order.)  The Surf City defendants, the movants here, have moved for summary judgment once before.  (Dkt. entry no. 33, 4-25-10 Def. Mot.)  However, the Court denied the motion without prejudice and with leave to move again on the proper papers, ruling that the Surf City defendants had failed to present sufficient law to

demonstrate an entitlement to qualified immunity.  (Dkt. entry no. 43, 5-28-10 Order at 3.)

### DISCUSSION

### I.   Summary Judgment Standard

The standard for a motion for summary judgment is well-settled and will be briefly summarized here.  Rule 56 provides that summary judgment is proper if there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  In making this determination, the Court must "view[] the record in the light most favorable to the non-moving party and draw[] all inferences in that party's favor."  United States ex rel. Josenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009) (citing Abramson v. William Patterson Coll., 260 F.3d 265, 276 (3d Cir. 2001)).

The movant has the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant may satisfy this burden by showing "that there is an absence of evidence to support the nonmoving party's case" when the nonmoving party bears the ultimate burden of proof at trial.  Id. at 325.  Once the movant has met this burden, the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  Id. at 324.

## II.  Section 1983 Claims

A plaintiff asserting civil rights violations under Section 1983 must establish that the defendant acted under color of state law to deprive him or her of a right secured by the United States Constitution or the laws of the United States.  Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws.  Id.; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

For a plaintiff's Section 1983 claims to survive a motion for summary judgment there must be a genuine issue of fact as to whether the defendant (1) acted under color of state law, or (2) deprived the plaintiff of a federal right.  Groman, 47 F.3d at 633.  "The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law."  Id. at 638.  Police officers are considered state actors.  Gale v. Storti, 608 F.Supp.2d 629, 634 (E.D. Pa. 2009).

### A.  Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "an entitlement not to stand trial or face

8

the other burdens of litigation." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).  The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  <u>Id.</u>

A two-step test examines whether, "[t]aken in the light most favorable to the party asserting the injury," an officer's conduct violated a constitutional right and if so, whether that right was clearly established.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  Courts have the discretion to address the two inquiries in either order.  <u>Pearson v. Callahan</u>, 129 S.Ct. 808, 818 (2009).  The answers for both of these questions must be in the affirmative for the suit to go forward; if a constitutional right was not violated, or even if it appears it was, if that right was not clearly established, the defendant is entitled to summary judgment.  <u>See id.</u> at 820 ("There will be cases in which a court will rather quickly and easily decide there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all.")

A right is clearly established for purposes of qualified immunity when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right" and "an objectively reasonable officer could

9

not be mistaken that his conduct violated that right." Anderson
v. Creighton, 483 U.S. 635, 640 (1987); Klemash v. Monroe Twp.,
No. 07-4190, 2010 WL 455263, at *7 (D.N.J. Feb. 4, 2010).
However, there need not be an exact decision on point and
"officials can still be on notice that their conduct violates
established law even in novel factual circumstances." Williams
v. Bitner, 455 F.3d 186, 191 (3d Cir. 2006).  "The protection of
qualified immunity applies regardless of whether the government
official's error is a mistake of law, a mistake of fact, or a
mistake based on mixed questions of law and fact." Klemash, 2010
WL 455263, at *7 (internal citations omitted).  "When the issue
of qualified immunity requires resolution of factual disputes,
however, the court must defer consideration of immunity until the
factual issues are resolved by a jury." Crouse v. S. Leb. Twp.,
668 F.Supp.2d 664, 675 (M.D. Pa. 2009) (citing Monteiro v. City
of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006)).  The Court will
conduct the two-step qualified immunity analysis for each of the
constitutional violations asserted.  However, the results for
Casella and Robinson differ from that of Collins and Surf City.[3]

---

[3] As an initial matter, the Surf City defendants note that
Counts Two, Three, and Four of the First Amended Complaint are
not alleged against them (Def. Br. at 53), and the plaintiffs
agree (Pl. Opp'n at 37 n.2).  Thus, summary judgment will be
entered on those claims in favor of the Surf City defendants.

B.    **Substantive Due Process**

The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "[T]he due process clause of the fourteenth amendment protects against arbitrary or irrational government action." Neiderhiser v. Bor. of Berwick, 840 F.2d 213, 217 (3d Cir. 1988). Due process rights are divided into two areas: substantive due process and procedural due process. Hemphill v. Hochberg, No. 07-2162, 2008 U.S. Dist. LEXIS 50623, at *21-22 (D.N.J. June 27, 2008).

As the Third Circuit recently described:

[T]he first step in evaluating a section 1983 claim is to "identify the exact contours of the underlying right said to have been violated" and to determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." Furthermore, "the core of the concept [of due process is] protection against arbitrary action" and "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." The Supreme Court has consistently "spoken of the cognizable level of executive abuse of power as that which shocks the conscience."

Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) (internal citations omitted). To establish a substantive due process claim, a plaintiff must prove (1) the particular interest at issue is protected by the substantive due process clause and (2) the government's deprivation of that protected interest shocks the conscience. United Artists Theatre Cir., Inc. v. Twp. of Warrington, 316 F.3d 392, 400-02 (3d Cir. 2003). For example, "ownership is a property interest worthy of substantive due

11

process protection." DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell, 53 F.3d 592, 600 (3d Cir. 1995), overruled on other grounds by United Artists, 316 F.3d at 401.  In other words, here, plaintiffs must have been deprived of a fundamental property interest under the Constitution.  See Gikas v. Wash. Sch. Dist., 328 F.3d 731, 736 (3d Cir. 2003).

The plaintiffs allege that the leasehold interest in the decedent's apartment is a core property interest to which the Constitution affords due process protections.  (Pl. Opp'n at 16.) The Surf City defendants argue that because the will had not yet been probated, and in any case that the will that was presented to Collins on March 7, 2006 was not the decedent's last will and testament, that the plaintiffs' assertion of a constitutional right as of the dates in question (as opposed to after the will was probated) must fail.  (Def. Br. at 18-19.)

A lessee possesses a property interest protected by substantive due process.  See Am. Marine Rail NJ, LLC v. City of Bayonne, 289 F.Supp.2d 569, 582-83 (D.N.J. 2003); Damascus Bakery, Inc. v. Elwell, No. 08-1568, 2010 WL 3359526, at *4 (D.N.J. Aug. 25, 2010).  Moreover, under New Jersey law, a lease survives the death of a tenant (or a lessor), unless the lease itself specified otherwise.  Ctr. Ave. Realty, Inc. v. Smith, 264

N.J.Super. 344, 349 (N.J. App. Div. 1993).[4]  If these were the only considerations, the plaintiffs would likely prevail. However, the question remains whether the plaintiffs were actually possessors of this property interest when they attempted to access the decedent's apartment on March 7, 9, and 11, 2006.

Neither party satisfactorily addresses how New Jersey law operates between the time of a testator's death and the actual probating of the will.  Nor do the parties seem to grasp the apparent difference between the plaintiffs as <u>beneficiaries</u> of the will versus as <u>executors</u>.

The Surf City defendants contend that beneficiaries do not have a right to immediate possession of a leasehold interest upon the death of a testator.  The plaintiffs cite <u>Egner v. Egner</u>, 183 N.J.Super 468, 469 (N.J. App. Div. 1968) for the proposition that "title to real property vests in the heir or devisee automatically and immediately upon death of owner."  (Pl. Opp'n at 20.)  However, <u>Egner</u> dealt with real property, whereas here a leasehold interest is at issue.  In New Jersey this appears to be treated as personal property that goes to the executor.  <u>See Appl. for Awarding of Process of Subpoena Pursuant to R. S. 54:4-16</u>, 34 A.2d 239 (N.J. Cir. Ct. 1943); <u>Giannetti v. Smith</u>, 66 N.J.L. 374, 376-77 (N.J. Sup. Ct. 1901) ("leasehold estates, as

---

[4] Indeed, the decedent's executor is liable for rents due for the remainder of the lease.  <u>Gross v. Peskin</u>, 101 N.J.Super. 468, 469 (N.J. App. Div. 1968).

chattels real, are capable of being devised by will, but the devisee cannot take possession without the consent of the executor"). Thus, the plaintiffs, as heirs, did not yet have a clear right to the decedent's apartment, and thus do not have a constitutional claim against the Surf City defendants worthy of substantive due process protection.[5]

The Court does not find The New Jersey Anti-Eviction Act particularly relevant here. N.J.S.A. § 2A:18-61,1. The Act seems most concerned with the rights to occupant heirs: "At this stage of the development of case law surrounding the Act, it is well recognized that '[t]he legislation was designed to protect residential tenants against unfair and arbitrary evictions by limiting the bases for their removal.'" Maglies v. Estate of Guy, 193 N.J. 108, 121 (2007) (citing Assocs. v. Miranda, 115 N.J. 522, 528 (1989)). Goldenbaum did not, and has not, alleged that she was a tenant of the apartment by virtue of having a key

---

[5] Even if the Court is incorrect on this point of state law, it would find the right was not clearly established such that a reasonable police officer would be aware of it, since to confuse real property with chattels real would be a reasonable mistake of law. Moreover, given the condition of the first will with which Collins was presented, covered in handwritten edits, a reasonable mistake of fact is also present. See Groh v. Ramirez, 540 U.S. 551, 567 (2004) (noting the "qualified immunity doctrine applies regardless of whether the officer's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact") (citing Butz v. Economou, 438 U.S. 478, 507 (1978)).

or being a child of decedent.  Her right to possession of the apartment as an heir was not established as of March 7, 2006.[6]

Both Goldenbaum and Junz, however, did take <u>as executrices</u> under the will as of March 7, 2006.  The plaintiffs assert that "an executor takes his or her power and legal standing <u>from the will</u>, not from the 'probating of it.'"  (Pl. Opp'n at 20 (citing <u>Cole v. Smalley</u>, 25 N.J.L. 347 (1856)).)  The Surf City defendants cite the very same case for the proposition that "the authority of the executor is not wholly derived from the will. He has no authority to act until probate is granted to him." (Def. Br. at 31.)  However, it is the Surf City defendants that now appear to misconstrue New Jersey law.  A case more recent than any cited by either party on the issue holds that "[a]n executor may receive and dispose of the personal estate of the testator before probate. . . . He derives his power from the will, and not from the probate."  <u>Thiefes v. Mason</u>, 55 N.J. Eq. 456, 460 (N.J. Ch. 1897).  The case continues, to the Surf City defendants' point: "It is only in order to assert his right <u>to sue</u> as executor that he must first have probated the will."  <u>Id.</u> (emphasis added).

---

[6] Moreover, while the Anti-Eviction Act might apply to the DeLorenzos, the plaintiffs do not assert that it provides them any recourse against the Surf City defendants specifically, or that it provides a core constitutional right protected by substantive due process.

While "[t]he duties and powers of a personal representative commence upon his appointment," which occurs when the will is probated, "[t]he powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter."  N.J.S.A. § 3B:10-19.  This post-action ratification process appears to contemplate the practical realities of the executor needing to act before probate.  Furthermore, in the "appointment of person to control funeral and disposition" section, New Jersey law provides that:

> Prior to probate, a decedent's appointment of a person in a will to control the funeral and disposition of human remains may be carried out in accordance with section 22 of P.L.2003, c. 261 (C.45:27-22).  If known to them, a person named executor in a will shall notify such a person of their appointment and advise them of what financial means are available to carry out the funeral and disposition arrangements.

N.J.S.A. § 3B:10-21.1.  Thus, the Court finds that the plaintiffs were entitled to possession by virtue of their status as named executrix and alternate executrix in the will.[7]  However, this right is provided by state law, not federal law, and the plaintiffs do not cite, nor has the Court found, any law indicating that this right is of a "particularly quality"

---

[7] Indeed, the record demonstrates that the plaintiffs were trying to carry out this very function.

protected by substantive due process.  DeBlasio, 53 F.3d at 598.[8]

Thus, the plaintiffs' substantive due process claim, as

executrices, fails as well.  The Court will grant summary

judgment to the Surf City defendants on this count.

### C.   Procedural Due Process

"To state a procedural due process claim, a plaintiff must

establish that the officers were acting as state actors when they

deprived him of a property interest to which he had a legitimate

claim of entitlement without the process he deserved." Gerhart

v. Pennsylvania, No. 09-1145, 2009 WL 2581715, at *4 (E.D. Pa.

Aug. 13, 2009) (internal citations omitted).  "[I]t is well

established that possessory interests in property invoke

procedural due process protections.  At the core of procedural

due process jurisprudence is the right to advance notice of

significant deprivations of liberty or property and to a

meaningful opportunity to be heard." Gale, 608 F.Supp.2d at 634

(internal citations omitted).  The plaintiffs allege violation of

their procedural due process rights.  (Pl. Opp'n at 27.)  The

Surf City defendants again assert qualified immunity as to

Collins, Casella, and Robinson.  (Def. Br. at 12.)

---

[8] Similarly, even if this right is one protected by the
Fourteenth Amendment, it was a reasonable mistake on the part of
the officers, given the evidence before them on the matter.

### i.   Constitutional Right

As discussed above, the plaintiffs had a right to possession of the apartment as executrix and alternate executrix.  <u>Ctr. Ave.</u>, 264 N.J.Super. at 349 ("as a matter of well established legal doctrine, both the rights and obligations of the executor are coextensive with the rights and obligations of the tenant under the lease").  Because "it is well established that possessory interests in property invoke procedural due process protections," the Court must consider whether this right was clearly established here.  <u>Abbott v. Latshaw</u>, 164 F.3d 141, 146 (3d Cir. 1998).

### ii.   Clearly Established

"A reasonably competent public official should know the law governing his conduct."  <u>Harlow</u>, 457 U.S. at 819.  Under New Jersey law, it is clearly established that leases do not expire at the death of the tenant, and executors are entitled to begin their work before the completion of probate.  <u>See e.g.</u>, discussion <u>supra</u>; <u>Ctr. Ave.</u>, 264 N.J.Super. at 349; N.J.S.A. §§ 3B:10-19, 3B:10-21.1.  At the same time, the Court is cognizant of the fact that "it is not for law enforcement officers to decide who is entitled to possession of property.  Rather, it is the domain of the courts, and citizens are to have a meaningful opportunity to be heard as to their rights before they are finally deprived of possession of property."  <u>Abbott</u>, 164 F.3d at

18

149.  However, "a decision on qualified immunity will be
premature when there are unresolved disputes of historical fact
relevant to the immunity analysis."  Gerhart, 2009 WL 2581715, at
*5.

     As in Gale, determining the reasonableness of the officers'
actions entails "a factual inquiry, particularly, exactly what
documents were provided . . . and what the contents of these
document were."  608 F.Supp.2d at 634.  While that case was
evaluated on a motion to dismiss, on summary judgment here some
facts have been adduced, and it appears that there are issues of
fact concerning the procedure the Surf City police followed.  At
no time did Collins ask the DeLorenzos for the lease, which would
have revealed the non-termination clause.  (Dkt. entry no. 54,
Ex. B, 6-23-09 Collins Dep. at 49, 53, 61; Goldenbaum Lease.)
Nor did Collins later ask to inspect the additional documentation
that the plaintiffs proffered to Casella on their March 9 visit,
including the last will and testament of the decedent.  (See 6-
23-09 Collins Dep. at 52-50.)  Collins may have either relied
upon the representations of DeLorenzo, or made a determination on
the validity of the will, which he denied doing at deposition.
(6-23-09 Collins Dep. at 55-56.)  See Thomas v. Cohen, 304 F.3d
563, 581 (6th Cir. 2002) (denying qualified immunity where
defendants "never undertook to determine whether Plaintiffs were
in fact tenants" and claimed it was "objectively reasonable for

them to rely upon [the landlord's] representations to the
contrary and that they were not required to believe Plaintiffs'
story").  The plaintiffs here have at least raised a factual
issue surrounding whether Collins incorrectly advised his
subordinates that the lease was terminated.  (6-23-09 Casella
Dep. at 23-24; 6-23-09 Robinson Dep. at 22.)

While the Surf City defendants have also pointed to
DeLorenzo's initial concern for guns in the apartment, the
officers made no efforts to verify the claim or secure the
firearms.  (Def. Br. at 3, 8; 6-23-09 Collins Dep. at 47; dkt.
entry no. 48, Ex. D, Collins Rpt.)  They also did not take any
action after DeLorenzo admitted to taking property from the
decedent's apartment.  (6-23-09 Collins Dep. at 59-60.)  Finally,
there are allegations that Collins and the other Surf City police
officers deferred to DeLorenzo based on his status as a police
officer.  (5-27-09 Junz Dep. at 137-39; 6-7-09 Junz Dep. at 46-
47.)  The Court finds that there are genuine issues of material
fact as to whether Collins is entitled to qualified immunity on
the plaintiffs' procedural due process claim, and thus the motion
on that count will be denied.  Gerhart, 2009 WL 2581715, at *5.

The Court will, however, grant the motion as to defendants
Casella and Robinson.  "It is well-established that officers are
entitled to reasonably rely on the information and decisions of
fellow and superior officers."  Mar v. City of McKeesport, No.

05-19, 2007 WL 1556911, at *4 (W.D. Pa. May 25, 2007).  For example, the court in Rogers v. Powell, 120 F.3d 446, 456 (3d Cir. 1997) held that it was objectively reasonable for police officers to arrest the plaintiff when they relied upon the statements of another officer who attested to the existence of an arrest warrant.

Casella and Robinson were in touch with Collins, their superior officer, at each instance of contact with the plaintiffs and the DeLorenzos.  (See 6-4-09 Junz Dep. at 46-47; 6-23-09 Casella Dep.; 6-23-09 Robinson Dep. at 22.)  For example, Robinson testified that "information passed to me from the chief and the sergeant . . . from senior guys . . . [was that] the lease was no longer valid due to the decedent – the tenant passing." (6-23-09 Robinson Dep. at 22.)  In turn, "[b]oth the chief and the sergeant" told Robinson "[t]he decedent's family was trying to gain entry to the property and didn't have correct paperwork, and that they were not allowed to enter until they did," and Robinson felt he "had no choice but to accept" his superiors' determinations on the matter.  (Id. at 13, 18.)  Casella consulted with Collins before proceeding at each turn, and the actions of Casella and Robinson comported with the initial determinations made by Collins.  Although Robinson did not call Collins before threatening to arrest all of the parties on March 11, he faced a "volatile" situation that "turned into a

melee." (Id. at 25-27.)  Moreover, both officers testified they were attempting to "try to do right by everybody" and keep things "from getting out of hand."  (6-23-09 Casella Dep. at 40-41 ("I held [all of the parties] on the same level, because at that point, I wasn't really 100 percent clear what was going on, and I had previous reports that they weren't supposed to be at the apartment.") (emphasis added); 6-23-09 Robinson Dep. at 17, 24-25.)  In short, Casella and Robinson relied on the determinations and orders of their superiors, and are thus entitled to qualified immunity on the procedural due process claim.  The Court will grant the motion on this count.

### D.    Fourth Amendment

The plaintiffs appear to allege two claims under the Fourth Amendment - first, that the Surf City defendants effected an unconstitutional seizure of their person by ordering them to the police station, and second, that the Surf City defendants effected an unconstitutional seizure of their property by interfering with their possessory interest in the decedent's apartment.  The Fourth Amendment protects people's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  Brown v. Muhlenberg Twp., 269 F.3d 205, 209 (3d Cir. 2001).

22

### i.   Seizure of Person

A person is "seized" under the Fourth Amendment if he or she does not feel free to leave.  Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 147 (3d Cir. 2005).  A seizure occurs whenever a police officer restrains a person's freedom and prevents him or her from walking away.  Couden v. Duffy, 446 F.3d 483, 494 (3d Cir. 2006) (citing Terry v. Ohio, 392 U.S. 1 (1968)).  Here, the Surf City defendants assert that the plaintiffs were never arrested, and that they came to the police station willingly for the purpose of filling out a complaint for theft against the DeLorenzos.  (Def. Br. at 44-45.)[9]  However, construing the alleged facts in their favor, the plaintiffs have provided a genuine issue of material fact as to whether they were seized on March 9, 2006.  (6-4-09 Junz Dep. at 46-47, 50-52 (testifying that "[t]hey were trying to figure out whether they were going to arrest us . . . we were told to sit at this table in a room . . . [a]nd not to move and not to leave and not to go to the bathroom and don't get a drink and sit there.").)

As with the alleged procedural due process violation discussed supra, however, the Court finds that Casella and

_____

[9] The Court points out that although the Surf City defendants claim that Junz testified she was not arrested (Def. Br. at 45), this testimony is not found in the citation provided and the Court cannot find it elsewhere.  Moreover, Exhibit I is the May 27, 2009 deposition, not the October 29, 2009 deposition, as cited in their brief.  Id.

Robinson were again acting on their superiors' orders.  Collins's
report gave credence to DeLorenzo's contention that "[the
plaintiffs] were not supposed to be there."  (6-23-09 Casella
Dep. at 23-24.)  When Casella responded to the plaintiffs' call
on March 9, 2006, he consulted Collins each time before making a
decision on how to proceed.  (Dkt. entry no. 51, Ex. L, Casella
Rpt; 6-23-09 Casella Dep. at 23-24, 50-51.)  Casella also relied
on his superior's March 7, 2006 report, which he took to mean
"obviously, there was an issue with them being at the house.  It
said so in the chief's initial report and directly from the
property owner," and led him to the conclusion that "the safest,
most neutral place to be able to go and actually function and try
to do the best I could for everybody, was at the police station."
(6-23-09 Casella Dep. at 31-32.)

     Before intervening on March 11, 2006, Robinson similarly had
been told by his superiors, "initially by the chief," that they
needed a court order, and that the plaintiffs did not "have the
correct paperwork and they were not allowed to enter until they
did."  (6-23-09 Robinson Dep. at 18, 13.)  He also "believe[d] he
was told the decedent's wife was not on the lease, which was why
they were not allowed onto the property" and never saw a copy of
the lease himself.  (Id. at 14.)  When asked if he made any
independent judgment on what documents the plaintiffs were
required to provide, Robinson testified that he "was getting the

same answer from two separate people," had "no reason to doubt," and felt he "had no choice but to accept" the conclusions of his superiors.  (Id. at 18.)

Casella and Robinson have thus demonstrated entitlement to qualified immunity on the plaintiffs' Fourth Amendment seizure of person claim, and the motion as to them on that Count will be granted.  However, as to Collins, given the genuine issues of material fact at this time, a ruling on qualified immunity is premature, and the motion will be denied as to him.  Crouse, 668 F.Supp.2d at 675.

### ii.  Seizure of Property

A "Fourth Amendment 'seizure' of property occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'"  Muhlenberg Twp., 269 F.3d at 209 (internal citations omitted).  "While the Fourth Amendment does not protect possessory interests in all types of property, it explicitly protects the possessory interest in a house."  Gerhart, 2009 WL 2581715, at *4 n.7.  The acts of police officers in, for example, assisting in an illegal eviction without an order, a writ, a warrant, or any other statutory authority can constitute an unreasonable seizure in violation of the Fourth Amendment.  See Open Inns, Ltd. v. Chester Cnty. Sheriff's Dep't, 24 F.Supp.2d 410, 424 (E.D. Pa. 1998).

25

Although the Surf City defendants assert qualified immunity over the plaintiff's Section 1983 claims, they have not presented any law to support their entitlement to qualified immunity for the plaintiff's Fourth Amendment seizure of property claims or that the Surf City defendants made a reasonable mistake regarding such alleged rights.  See Cunningham v. N. Versailles Twp., No. 09-1314, 2010 WL 391380, at *14 (W.D. Pa. Jan. 27, 2010) (defendants' argument that they acted reasonably in impounding a vehicle because plaintiff could not provide sufficient proof of his right to drive or possess it was not persuasive).  Because the defendant bears the burden of demonstrating qualified immunity, Thomas v. Independence Twp., 463 F.3d 285, 293-94 (3d Cir. 2006), the Court will deny the Surf City defendants' motion insofar as it seeks summary judgment on this claim, with leave to move again on the proper papers.

## III. State Law Claims

The Surf City defendants also move for summary judgment as to the plaintiffs' state law claims for negligence, false arrest, and false imprisonment.  The New Jersey Tort Claims Act ("NJTCA") provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law.  Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."  N.J.S.A. § 59:3-3.

The Supreme Court of New Jersey has stated that "[a]dopting the analysis used in federal civil rights cases, our courts have ruled that to obtain summary judgment [on good faith immunity under N.J.S.A. § 59:3-3], a public employee must establish that her conduct was 'objectively reasonable.'" Fielder v. Stonack, 141 N.J. 101, 131-32 (1995). Thus, the objective reasonableness test for qualified immunity with reference to Section 1983 claims also applies "in determining questions of good faith arising under the Tort Claims Act." Gurski v. N.J. State Police Dep't, 242 N.J.Super. 148, 162 (N.J. App. Div. 1990). There are two alternative ways to meet the good faith standard, "[a] public employee either must demonstrate 'objective reasonableness' or that he behaved with 'subjective good faith.'" Alston v. City of Camden, 168 N.J. 170, 186 (2001). The burden of proof is upon the employee, who must prove either of these components in order for the good faith immunity to apply. Id.

### A.   False Arrest and False Imprisonment

Section 59:3-3 of the NJTCA does not make the good faith defense available when a public employee is liable for false arrest or false imprisonment. Toto v. Ensuar, 196 N.J. 134, 145-46 (2008). Moreover, as discussed supra with respect to the Fourth Amendment claims, there are at least genuine issues of material fact as to whether the plaintiffs were improperly held at the police station on March 9, 2006. Thus, the Court will

27

deny the Surf City defendants' motion for summary judgment on the false arrest and false imprisonment claims.[10]

## B.   Negligence

To prevail on a claim for negligence under New Jersey law, a plaintiff must establish the existence of a duty owed to the plaintiff by the defendant, a breach of that duty, and that the breach was the proximate cause of the plaintiff's injuries. Keith v. Truck Stops Corp. of Am., 909 F.2d 743, 745 (3d Cir. 1990).  However, negligence is insufficient to defeat the immunity provided by Section 59:3-3.  See Canico v. Hurtado, 144 N.J. 361, 365 (1996) ("A public employee, although negligent, may still act in good faith.").[11]  Instead, to overcome immunity under this section, "a plaintiff must prove more than ordinary negligence."  Id.  Summary judgment under Section 59:3-3 is appropriate if a public official establishes that his or her "acts were objectively reasonable or that they performed them with subjective good faith."  Id.; Nicini v. Morra, 212 F.3d 708, 815 (3d Cir. 2000).

---

[10] Unlike the Fourth Amendment claims under Section 1983, qualified immunity is not available for Casella and Robinson here because of the explicit exclusion under the NJTCA.

[11] While the plaintiffs support their argument by quoting N.J.S.A. § 59:3-1(a), "a public employee is liable for injury caused by his act or omission to the same extent as a private person," they neglect to include the prefatory clause "Except as otherwise provided by this act," which includes immunity under Section 59:3-3.

Where this Court has found, supra, that the plaintiffs'
Section 1983 claims against the Casella and Robinson must fail
because their reliance on the determinations and orders of their
superior officer was objectively reasonable, these officers are
also entitled to qualified immunity on the plaintiffs' negligence
claim under the NJTCA.  However, the Surf City defendants have
not established that Collins is entitled to immunity under the
NJTCA.  They fail to explain why it was objectively reasonable
for Collins to determine that the plaintiffs were not entitled to
access the apartment without examining the lease.

Though one of the cases cited by the Surf City defendants,
Canico, discussed the need for police officers to make "split-
second judgments" to "protect public safety" (Def. Br. at 51),
the Surf City defendants have not shown that Collins's March 7
decision, that the lease had terminated upon the decedent's
death, was made in any kind of urgent situation.  Nor do they
allege or establish that Collins acted in subjective good faith.
Finally, although the Court is not satisfied that the plaintiffs
have shown the existence of a duty owed them by Collins, they do
raise the possibility that Collins inappropriately deferred to
DeLorenzo.  See Games Galore of Ohio v. Masminster, 154 F.Supp.2d
1292 (S.D. Ohio 2001).  Thus, there is at least a genuine issue
of material fact as to whether Collins's actions rise above the
standard of "mere negligence."  Canico, 144 N.J. at 365.  Thus,

the Court will grant the motion for summary judgment on the negligence claim as to Casella and Robinson, and deny the motion as to Collins.

## IV. Municipal Liability

### A. Section 1983 Claims

Surf City asserts it is immune from the acts of its officers. (Def. Br. at 42.)  Civil rights liability cannot be predicated solely on the doctrine of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  However, "[a] municipality may be held liable under § 1983 when the alleged constitutional violation 'implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.'"  Gale, 608 F.Supp.2d at 635 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 680 (1978)).  "Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."  Klemash, 2010 WL 455263, at *8 (internal citations omitted).  "A plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."  Id. (internal citations omitted).  Police chiefs can be policymakers for the purposes of municipal liability.  See Hernandez v. Bor. of Palisades Park Police Dep't, 58 Fed.Appx. 909, 913 (3d Cir.

30

2003) (where "both New Jersey statutes and the Borough's own Police Manual" established the Police Chief was a policymaker). Additionally, "it is possible that a 'single instance' of misconduct by a policymaking city official could provide the basis for an inference that a municipal policy existed." Bartholomew v. Fischl, 782 F.2d 1148, 1154 (3d Cir. 1986).

The decision to treat the lease as terminated in this instance emanated from Police Chief Collins.  (See, e.g., 6-23-09 Casella Dep. at 23-24; 6-23-09 Robinson Dep. at 13-14, 18.) There is no written standard operating procedure or guideline in the Surf City Police Department for how disputes between landlords and tenants are to be handled.  (6-23-09 Collins Dep. at 20-21.)  While Collins did not issue a police-department-wide order with respect to the situation at issue, it is a "small department" where "everybody knows what's going on."  (Id. at 57.)  Construing all facts in the light most favorable to the plaintiffs, the Court finds that there is a genuine issue of material fact over whether Collins acted as a policymaker for Surf City.  Furthermore, though a dispute over the death of a long-term leaseholder is probably rare, the plaintiffs have raised a genuine issue of material fact as to whether it was a custom or practice of Surf City to treat leases as terminated upon the death of the tenant generally.  Thus, the Court will grant the motion as to Surf City insofar as it grants the motion

as to Collins, and deny the motion insofar as it denies the
motion as to Collins.

### B.   State Law Claims

"[P]ublic entities shall only be liable for their negligence
within the limitations of this act and in accordance with the
fair and uniform principles established herein." N.J.S.A. §
59:1-2.   The burden is on the public entity to plead and prove
its immunity under NJTCA.   <u>Blunt v. Klapproth</u>, 309 N.J.Super.
493, 501 (N.J. App. Div. 1998).   While the Surf City defendants
address how the police officers may be immune from liability
under the NJTCA, they fail to adduce any reason why Surf City
itself is entitled to immunity under the NJTCA.   Thus, the Court
will deny the motion on this count, without prejudice and with
leave to move again for relief upon proper papers.

### CONCLUSION

The Court, for the reasons stated <u>supra</u>, will grant the
motion in part and deny the motion in part as follows:

(a) The Court will grant the motion as to all of the Surf
City defendants with respect to the second, third, and
fourth counts of the plaintiffs' Amended Complaint, as well
as the claimed violation of substantive due process; and

(b) The Court will deny the motion as to all of the Surf
City defendants with respect to the claimed seizure of

property under the Fourth Amendment and the claims of false arrest and false imprisonment; and

(c) Insofar as the motion seeks further summary judgment for Casella and Robinson, the Court will grant the motion with respect to the (1) procedural due process claim, (2) seizure of person under the Fourth Amendment claim, and (3) negligence claim; and

(d) Insofar as the motion seeks further summary judgment for Collins and Surf City, the Court will deny the motion with respect to the (1) procedural due process claim, (2) seizure of person under the Fourth Amendment claim, and (3) negligence claim.

The Court will issue an appropriate order.


                                             s/ Mary L. Cooper
                                           **MARY L. COOPER**
                                           United States District Judge


Dated:    December 10, 2010